# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **J.N., R.N.-1, and K.N.**

**No. 17-0367** (Mingo County 16-JA-21, 16-JA-22, & 16-JA-23)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.N.-2, by counsel Susan Van Zant, appeals the Circuit Court of Mingo County's March 16, 2017, order terminating his parental rights to J.N., R.N.-1, and K.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Diana Carter Wiedel, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, the DHHR filed an abuse and neglect petition against petitioner and the mother. According to the petition, the DHHR received two referrals in November of 2015 regarding the family. The first referral indicated that R.N.-1, five years old at the time, came to school with a black eye and was overheard saying "It is ok [sic], she gets angry and hits me." When interviewed, R.N.-1 stated that her mother accidentally hit her. R.N.-1 stated that she sometimes observed her parents hit each other. When questioned by a Child Protective Services ("CPS") worker, the mother explained that she accidently scratched the child while attempting to buckle R.N.-1's seatbelt while the child was misbehaving. The second referral indicated that R.N.-1 would sometimes arrive home from school to find no one at home. Further, in December of 2015, police were dispatched to the home for a domestic violence incident where the mother allegedly stabbed petitioner. The DHHR also alleged that petitioner previously had his parental rights to an older child, D.H., involuntarily terminated. The DHHR alleged that petitioner failed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Further, because one of the children and petitioner share the same initials, we will refer to them as R.N.-1 and R.N.-2, respectively, throughout this memorandum decision.

to acknowledge his termination of parental rights to D.H. Petitioner stated that he did not know about the prior proceedings when they were occurring. The DHHR ultimately based the petition on aggravated circumstances concerning petitioner's prior termination of parental rights and domestic violence in the home.

In February of 2016, the circuit court held a preliminary hearing in which it found probable cause to believe that the parents neglected the children. The circuit court found that the children remaining in the home was not contrary to their best interests so long as the DHHR provided appropriate supervision and services. The circuit court also granted petitioner a preadjudicatory improvement period.

In May of 2016, the circuit court held a preliminary hearing on an amended petition in which the DHHR alleged additional abuse and/or neglect due to drug abuse, among other things. A CPS worker testified that, the mother and petitioner, while undergoing a psychiatric evaluation, tested positive for marijuana. The mother became unstable during the evaluation and threatened to harm herself. During her transfer to Three Rivers Medical Center, the mother accused petitioner of committing acts of domestic violence against her in the presence of the children, including one incident in which he attempted to strangle her by lifting her against the wall. The CPS worker testified that petitioner spoke privately with her and stated that he wanted to relinquish his rights to the children. The CPS worker told petitioner that he should speak to his attorney and to "not give up yet." The circuit court again found probable cause to believe that the parents had neglected their children; that they had participated in domestic violence, which endangered the children; and that aggravated circumstances existed as to petitioner. The circuit court ordered the DHHR to remove the children from the home due to the severe risk of neglect.

In July of 2016, the circuit court held an adjudicatory hearing. Petitioner requested a post-adjudicatory improvement period to which the guardian objected, stating that less than two weeks prior, there had been another domestic violence incident between petitioner and the mother. Petitioner thereafter appeared at a multidisciplinary team ("MDT") meeting with bloody knuckles. The guardian stated that petitioner did not have a stable home and was unsure where he was residing. Previously, petitioner had advised that he scheduled an appointment for counseling services but could not remember the date or time of such appointment. However, the guardian noted that he never showed up for those services. The guardian stated that petitioner failed to successfully complete the preadjudicatory improvement period. As such, the circuit court denied petitioner's request for a post-adjudicatory improvement period and adjudicated him as an abusing parent.

The circuit court held another hearing in August of 2016 and petitioner again moved for an improvement period. The guardian objected, noting that petitioner was having problems with his current girlfriend who had been pulled over by police and was found to be in possession of petitioner's prescription medication. Petitioner did not test positive for the prescribed medication. The circuit court granted petitioner a post-adjudicatory improvement period of sixty days.

In March of 2017, the circuit court held a dispositional hearing. Petitioner failed to attend, but was represented by counsel. During the hearing, the mother voluntarily relinquished

her parental rights to all three children. Neither party presented any witnesses. The guardian submitted a supplemental report in which she stated that during the pendency of his case, petitioner had been in at least two separate relationships with other women who also have open CPS cases. Petitioner also intentionally cut his wrists in December of 2016. Petitioner's counsel stated that he had not heard from petitioner in months. The circuit court noted that petitioner was not present and had made no effort to participate in services. Ultimately, the circuit court found by clear and convincing evidence that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. As such, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in terminating his parental rights. In support of his assignment of error, petitioner argues that the circuit court erred in considering the hearsay testimony of a CPS worker at the preliminary hearings addressing the petition and amended petition. Petitioner additionally argues that his parental rights were terminated by presentation of a case plan in the circuit court that failed to meet minimum standards. However, this Court finds that petitioner's arguments are without merit. There is no evidence in the record that petitioner objected to the worker's testimony nor to any alleged deficiency with the case plan below. We have previously held that "[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)). As such, we decline to consider these arguments on appeal.

---

[2]The parents' parental rights were either terminated or voluntarily relinquished below. According to the parties, the children have been placed in separate foster homes, due to concerns over their behavior, with a goal of adoption by foster families.

Petitioner also argues that his parental rights were terminated because of his failure to appear at the dispositional hearing. However, we see no evidence in the record suggesting that petitioner's absence was the cause of such termination. Rather, the circuit court found that, at the time of the dispositional hearing, petitioner was unwilling or unable to correct the conditions of abuse and/or neglect that necessitated the removal of his children from the home and further found that there was no reasonable likelihood that petitioner could correct the conditions in the near future. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

In this case, petitioner was granted a pre- and post-adjudicatory improvement period, both of which he failed to complete. As set forth in the record, the terms of petitioner's improvement period required that he submit to drug screens, participate in counseling sessions, and attend visitation with the children, among other things. The circuit court noted that petitioner made no effort to participate in these services. In fact, the guardian noted in her supplemental report that petitioner had been noncompliant with most services from October of 2016 through January of 2017. Further, the transcript from the hearing held in August of 2016, shows that petitioner engaged in domestic violence against the mother and, thereafter arrived at a MDT meeting with bloody knuckles, showing a lack of progress during the improvement periods. Petitioner disregarded his children's well-being by associating with women who also had pending CPS cases. Petitioner also intentionally cut his wrists during the pendency of this case. It is clear from the evidence that petitioner made minimal attempts to correct his behavior in accordance with the case plan.

Based upon the evidence outlined above, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. The circuit court found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

4

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 16, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017


**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker